# United States District Court

_____ SOUTHERN DISTRICT OF NEW YORK _____

1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

**SUMMONS IN A CIVIL CASE**

V.

CASE NUMBER:

ATLANTIC HIGHLANDS NURSING HOME,

 **07 CIV 10261**

TO: (Name and address of Defendant)

Atlantic Highlands Nursing Home
8 Middletown Avenue
Atlantic Highlands, NJ 07716
(732) 291-0600

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

LOWELL PETERSON, ESQ.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 BROADWAY, SUITE 501
**NEW YORK, NY 10018**

an answer to the complaint which is herewith served upon you, within_____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

NOV 0 9 2007

**J. MICHAEL McMAHON**

CLERK

DATE

(BY) DEPUTY CLERK

American LegalNet, Inc.
www.FormsWorkflow.com

AO 440 (Rev. 10/93) Summons in a Civil Action –SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
　　　　　　　　　Date　　　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Address of Server

(1)　　As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

American LegalNet, Inc.
www.FormsWorkflow.com

90503

**'07 CIV 10261**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

                 Plaintiff,

ATLANTIC HIGHLANDS NURSING HOME,

                 Defendant.

------------------------------------------------------- x



         Plaintiff, 1199 SEIU UNITED HEALTHCARE WORKERS EAST ("Plaintiff" or "Union"), by its attorneys, Meyer, Suozzi, English & Klein, P.C., as and for its Complaint respectfully alleges as follows:

### NATURE OF PROCEEDING

         1.   Plaintiff sues to confirm a labor arbitration award pursuant to Section 301(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185(c).

### JURISDICTION

         2.   This Court has jurisdiction over this proceeding pursuant to Section 301(c) of the LMRA, 29 U.S.C. Section 185(c).

### VENUE

         3.   Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. Section 185(a).

## THE PARTIES

4.    Plaintiff Union, whose offices are located at 310 West 43rd Street, New York, New York, is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. Section 152(5).

5.    Defendant Atlantic Highlands Nursing Home ("Atlantic Highlands") is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. Section 152(2).  Atlantic Atlantic Highlands' activities affect commerce within the meaning of Sections 2(6) and 2(7) of the LMRA, 29 U.S.C. Section 152(6) and (7).

## BACKGROUND

6.    Atlantic Highlands is bound by a collective bargaining agreement with the Union (the "CBA").  A copy of the CBA is attached as Exhibit 1.

7.    Section 33 of the CBA requires that Atlantic Highlands make payments to the 1199/SEIU Greater New York Benefit Fund ("Welfare Fund")1 for all covered employees.

8.    Section 35 of the CBA requires that Atlantic Highlands make payments to the 1199/SEIU Greater New

---

1 The Welfare Fund is sometimes referred to as the "Benefit Fund".

York Training and Education Fund ("Education Fund").

9.    In accordance with the CBA, any unresolved dispute concerning an employer's failure to make required contributions to the Welfare and Education Funds (together, the "Funds") is submitted to a designated Arbitrator to render a final and binding decision.

10.    Section 11 of the CBA contains a broad arbitration provision under which the Union submitted to arbitration a dispute concerning Atlantic Highlands' failure to remit payment of contributions on behalf of its employees to the Funds.

## AS AND FOR ITS FIRST CAUSE OF ACTION

11.    The Union repeats and realleges the allegations set forth in paragraphs "1" through "10" as stated above.

12.    In accordance with the CBA, the Union submitted to arbitration before a duly designated Arbitrator, Jay Nadelbach, Esq., a dispute concerning Atlantic Highlands' failure to remit contributions to the Funds due and owing for the period May 1, 2007 through June 30, 2007, and for payroll

-3-

periods prior to January 31, 2007.

13.  In accordance with notice duly given, Arbitrator Nadelbach held a hearing on August 2, 2007 concerning Atlantic Highlands' failure to remit contributions to the Funds.

14.  After due consideration of all the evidence presented, in an award dated August 7, 2007 (the "the August 7 Award") Arbitrator Nadelbach ruled that Atlantic Highlands violated the CBA by failing to make the required contributions to the Funds.  A copy of the August 7 Award is attached as Exhibit 2. The Arbitrator directed Atlantic Highlands to pay the Funds as follows, plus interest and fees:

<u>Welfare Fund</u>

$57,389.32

<u>Education Fund</u>

$1,602.12

15.  The Arbitrator sent written notice of his award to the Union and Atlantic Highlands.

16.  Atlantic Highlands has failed and refused, and continues to fail and refuse, to comply with the August 7 Award.

-4-

WHEREFORE, the Union respectfully prays for an Order and Judgment:

1.   Confirming the August 7 Award of Jay Nadelbach, Esq.

2.   Directing Atlantic Highlands to pay the Welfare Fund the amount of $57,389.32, plus interest at the statutory rate from August 7, 2007 until payment is received.

3.   Directing Atlantic Highlands to pay the Education Fund the amount of $1,602.12 plus interest at the statutory rate from August 7, 2007 until payment is received.

4.   Granting such other and further legal and equitable relief as the Court may deems just and proper, together with the reasonable attorney's fees and costs and disbursements for this proceeding.


Dated:   New York, New York
         November 9, 2007

-5-

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.


Lowell Peterson (LP 5405)
Attorneys for Plaintiff
1350 Broadway, Suite 501
P.O. Box 822
New York, New York  10018-0026
212-239-4999
lpeterson@msek.com

-6-

# AGREEMENT
# BETWEEN

# ATLANTIC HIGHLANDS NURSING HOME

## AND



# SEIU 1199 NEW JERSEY HEALTH CARE UNION

# MAY 12, 2005 THROUGH JUNE 15, 2008

## TABLE OF CONTENTS

ARTICLE 1 – BARGAINING UNIT ....................................................................5

ARTICLE 2 – UNION SHOP .............................................................................5

ARTICLE 3 – PROBATIONARY PERIOD...........................................................6

ARTICLE 4 – NO DISCRIMINATION ................................................................6

ARTICLE 5 - UNION ACTIVITIES AND COMMUNICATIONS ..........................6

ARTICLE 6 – SENIORITY ................................................................................8

ARTICLE 7 – LAYOFF AND RECALL................................................................8

ARTICLE 8 – TRANSFER AND PROMOTION ...................................................9

ARTICLE 9 – NO STRIKE - NO LOCKOUT .....................................................10

ARTICLE 10 – DISCIPLINE AND DISCHARGE................................................11

ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE.................12

ARTICLE 12 – WORK WEEK..........................................................................14

ARTICLE 13 – WAGES ..................................................................................16

ARTICLE 14 – MEALS ..................................................................................16

ARTICLE 15 – HOLIDAYS.............................................................................17

ARTICLE 16 – VACATIONS ..........................................................................18

ARTICLE 17 – SICK LEAVE ..........................................................................19

ARTICLE 18 – LEAVE OF ABSENCE..............................................................20

ARTICLE 19 – MATERNITY LEAVE...............................................................21

ARTICLE 20 – BEREAVEMENT LEAVE .........................................................21

ARTICLE 21 – LEAVE FOR JURY DUTY ........................................................22

ARTICLE 22 – PATERNITY LEAVE................................................................22

ARTICLE 22 – LEAVE FOR MARRIAGE .........................................................22

ARTICLE 23 – TUITION ...............................................................................22

ARTICLE 24 – MALPRACTICE INSURANCE ..................................................22

ARTICLE 25 – POLYGRAPH TEST....................................................22

ARTICLE 26 – BREAKAGE....................................................23

ARTICLE 27 – UNIFORMS....................................................23

ARTICLE 28 – MAINTENANCE OF STANDARDS...........................................23

ARTICLE 29 – MEDICAL EXAMINATIONS ....................................23

ARTICLE 30 – CHECK-OFF AUTHORIZATION ..............................................24

ARTICLE 31 – SAVINGS CLAUSE ....................................................24

ARTICLE 32 – CONTRACTING OUT ................................................25

ARTICLE 33 – GNY/1199 BENEFIT FUND ......................................25

ARTICLE 34 – NATIONAL INDUSTRY PENSION FUND ............................27

ARTICLE 35 – TRAINING FUND AND ALLIANCE FUND ...........................29

ARTICLE 36 – MANAGEMENT RIGHTS ..........................................30

ARTICLE 37 – THE PARTIES ..............................................31

ARTICLE 38 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT ..31

ARTICLE 39 – LABOR-MANAGEMENT COMMITTEE...................................32

ARTICLE 40 – DURATION ..............................................32

SCHEDULE  A ..............................................35

# AGREEMENT

AGREEMENT made this 12th day of May, 2005, by and between SEIU 1199
NEW JERSEY, SEIU hereinafter referred to as the "Union", having its principal
offices in the state of NEW JERSEY, located at 555 Route One South, Iselin, NEW
JERSEY, 08830, hereinafter referred to as the "Union" and KASOT
CORPORATION d/b/a ATLANTIC HIGHLANDS NURSING HOME, INC.,
hereinafter referred to as the "Employer", located at 8 Middletown Avenue, Atlantic
Highlands, in the state of New Jersey 07716.

# WITNESSETH

WHEREAS, the Union has been designated by a majority of the employees in the
bargaining unit as their sole collective bargaining agent with respect to wages,
hours, and other conditions of employment; and

WHEREAS, it is recognized that the efficient and orderly method of establishing
and maintaining peaceful and harmonious labor relations and of dealing with
problems and controversies arising out of employment is through negotiations and
agreement, rather than through strikes and lockouts;

NOW, THEREFORE, in consideration of the mutual promises herein contained, the
parties agree as follows:

## ARTICLE 1 – BARGAINING UNIT

1.1   The Employer recognizes The Union as the sole and exclusive bargaining agent for all employees, excluding office clerical employees, supervisors, watchmen and guards.  In the event any dispute arises as to whether or not an employee does in fact, come within one of the included or excluded categories above mentioned, such dispute shall be determined in accordance with the arbitration procedures of this Agreement.  No supervisor shall perform bargaining unit work, except for purposes of instruction or in any emergency.

1.2   Any additional classifications not presently covered shall become part of this Agreement, when the Union represents a majority within such classifications and shall be subject to separate negotiations between the parties.  The result of such negotiations shall be attached as an appendix to this Agreement. The determination of whether the Union does in fact represent a majority, if it were disputed, shall be determined in accordance with the arbitration procedures of this Agreement.

## ARTICLE 2 – UNION SHOP

2.1   It shall be a condition of employment that all employees covered by this Agreement who are members of the Union in good standing on the execution or effective date of this Agreement, whichever is later, shall remain members in good standing.  Those who are not members on the execution or effective date of this Agreement, whichever is later, shall on the thirtieth (30th) day following the execution or effective date of this Agreement, whichever is later, become and remain members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution or effective date, whichever is later, shall on the thirtieth (30th) day following the beginning of such employment become and remain members in good standing in the Union.  The Employer shall promptly upon hiring new employees notify them of the existence of the Union Agreement and the Union shop provisions thereof.  Upon notice by the Union to the Employer that an employee has not complied with the Union shop requirements, the Employer shall forthwith discharge said employee and forthwith advise the Union thereof in writing.

2.2    The Employer shall forthwith give the Union a list containing the names and home addresses of employees covered by this Agreement, their categories, social security numbers, wages and dates of hire, and shall thereafter promptly furnish each month the names, home addresses, dates of hire, categories, social security numbers and wages of all new employees in the bargaining unit.

## ARTICLE 3 – PROBATIONARY PERIOD

New employees shall be deemed probationary during the first thirty (30) days of their employment, during which time they may be discharged for any reason, which need not be stated by the Employer.  An additional thirty (30) days may be requested to the Union; such request shall not be unreasonably withheld.

## ARTICLE 4 – NO DISCRIMINATION

The opportunity to give and obtain employment without discrimination because of race, creed, color, age, sex, sexual orientation, marital status or national origin is hereby recognized by the parties to this Agreement.  The Employer shall not discriminate against any employee because of Union activities.

## ARTICLE 5 - UNION ACTIVITIES AND COMMUNICATIONS

5.1    The Union shall be permitted to conduct Union meetings on the Employer's premises at designated locations.

5.2    Union staff representatives shall have access to the Employer's premises to discharge her duties as representative of the Union.

5.3    Union Delegates elected or selected by the Union shall take up with the Employer, during working hours at reasonable times, problems that might arise at the place of employment.

5.4    Grievances shall normally be processed during the working hours of the affected employee(s).  Employees shall suffer no loss of pay on account of participating in grievance meetings.

5.5    The Employer shall provide to the Union a locked, glass enclosed bulletin board at each work site for the posting of notices pertaining to Union activities.

5.6    Designated Union Delegates shall have up to forty-five (45) minutes to orient new bargaining unit employees to the Union. This shall be scheduled as part of the employee's normal orientation and shall cover topics related to this Agreement and SEIU 1199NJ. Union Delegates shall not disparage the Employer in orientation.

5.7    In the interest of maintaining stability of labor relations and realizing that the handling of grievances by stewards is an important step in the initial processing of grievances so as to encourage stability of labor relations, the parties agree that it is advisable from time-to-time to have the Delegate take a course of instruction. Accordingly, during each contract year, no more than seven (7) Delegates (1 nursing assistant from each shift, 1 from dietary, 1 from housekeeping, 2 LPNs), upon the Union giving two (2) weeks advance notice to the Employer, shall be granted two (2) days off with pay, whether scheduled to work or not for the purpose of attending conferences or steward training programs.

5.8    The Employer shall grant Union leave up to one (1) year or the individual's length of service at the facility, whichever is less, shall be granted to employees in order to accept a position with the Union. Time spent on Union leave shall count as time worked for seniority and all other purposes. Upon returning to work at the facility, the employee shall return to substantially the same position (i.e., status, shift, job classification) as the employee held prior to the Union leave.

5.9    The Employer shall release members of the Union's Executive Board in its employ, with no loss of pay, so that they may attend such Board meetings.

5.10   The Employer shall grant three (3) employees election day off, with pay, for all major Federal and State elections.

5.11 The Union negotiating committee, not to exceed ten (10) employees, to be paid for not more than four (4) negotiation sessions by the Employer at straight time rates.

## ARTICLE 6 – SENIORITY

6.1   Seniority shall be the length of an employee's continuous service from the employee's most recent date of hire by the Employer.

6.2   Seniority shall also accrue during paid leaves, military leaves, leaves of absence, or during the period which the employee receives disability benefits or workmen's compensation.

6.3   Seniority shall be terminated by:

    (a)    Discharge without being reinstated;

    (b)    Voluntary quit or resignation;

    (c)    Overstaying an authorized leave of absence, unless extended, or giving a false reason for such leave or acceptance of employment with any other employer during such leave of absence;

    (d)    Layoff for a period of one (1) year or more, or if for any reason more than one (1) year has elapsed since the employee last worked for the Employer.

6.4   Upon request by the Union, the Employer shall provide to the Union a list of bargaining unit employees with their date of hire, rate of pay, status (part-time/full-time) and job classification.

## ARTICLE 7 – LAYOFF AND RECALL

7.1   The Employer has the right to lay-off only for bona fide reasons, provided it shall not result in or require the remaining employees to assume substantially more work or duties or responsibilities in excess of what they were doing prior to layoff. If a layoff or reduction of hours becomes necessary, the Employer will notify the Union of its intention to proceed as soon thereafter as reasonably possible but no less than fourteen (14) days in advance and meet upon request by the Union as soon as practicable.

7.2   In the event of a layoff or reduction of hours, the Employer shall determine the positions (job classification, status, and shift) affected.

7.3   Temporary and probationary employees shall be laid off first. Then the employee with the least seniority in the affected position shall be laid off or reduced first. Affected employees shall be given at least forty-eight (48) hours to make their displacement or layoff choice. The displaced employee will have the options outlined as follows:

Displace the least senior employee with the same status and classification on another shift, provided he/she has more seniority than that employee; or

Displace the least senior employee with the same status and shift in a classification he/she has previously held, provided he/she has more seniority than that employee; or

Choose an unfilled position, provided he/she is qualified, without additional training. or

Displace the least senior employee in any position for which he/she is qualified, provided he/she has more seniority than that employee; or

Choose to take a layoff.

If more than one (1) employee is being laid off at one time, they shall exercise their various options according to seniority with the most senior employees going first.

7.4   When recall occurs, the employee laid off last shall be rehired first according to seniority. Recalled employees will be notified by registered mail to last known address and they must respond within five (5) business days from date of mailing. If there is no response after five (5) business days, the next most senior employee for that recalled position shall be notified.

## ARTICLE 8 – TRANSFER AND PROMOTION

8.1   When a permanent job vacancy occurs in the bargaining unit, and the Employer intends to fill the vacancy, or in the event of the creation of a new job within the bargaining unit, the Employer will post a notice of such vacancy for a

period of seven (7) calendar days. The posting shall include the job classification, shift, weekend schedule, if any, floor/unit and status. Bargaining Unit employees shall be eligible to bid on open positions occurring within the same shift and classification.

8.2    Any employee who has passed the probationary period may submit an application for the posted position prior to the end of the posting period.

8.3    (a)    The job shall be awarded to the qualified bidder with the most seniority who is employed in the same classification as the posted position. If there are no bidders from the classification where the vacancy exists, then the job shall be awarded to the qualified bidder with the most seniority from another job classification. Successful applicants will be placed in the new job no later than thirty (30) calendar days after the posting of the vacancy. If there are no qualified bidders from the bargaining unit, the Employer may hire from outside the bargaining unit.

(b)    A qualified bidder is one whose performance evaluations and work record (attendance, discipline) demonstrate that the employee can perform the duties of the posted job in a manner that provides quality care and service to the residents.

8.4    An employee who successfully bids on a new position shall serve a trial period equal to the probationary period set forth in Article 3. If the employee does not pass the trial period, the employee may return to his/her former job level without loss of seniority. An employee may, during the trial period, elect to return to the former job without loss of seniority if the job has not been filled or, if filled, may return to the former job level without loss of seniority. Employees who are awarded a new job after a bid, and who successfully complete the trial period, shall be precluded from bidding on another job for a period of six (6) months after the award.

## ARTICLE 9 – NO STRIKE - NO LOCKOUT

During the term of this Agreement, the Union shall not call or authorize any strike against the Employer at the establishment covered by this Agreement and the Employer shall not affect any lockouts. Should an employee or employees engage in any strike and should the Employer notify the Union of such action, a

Representative of the Union shall, as promptly as possible, instruct such employee to forthwith cease such action and promptly return to their respective jobs and comply with the applicable provisions of this Agreement.

The Employer agrees that in consideration of the performance by the Union as set forth above, with respect to any strike which is contrary to the provisions of this section, there shall be no liability for damages on the part of the Union, its officers, agents, or members for breach of contract, by suit or otherwise.

## ARTICLE 10 – DISCIPLINE AND DISCHARGE

10.1  The Employer may not discharge or otherwise discipline a non-probationary employee without just cause.

10.2  If an employee receives a written reprimand, suspension or discharge, the Employer will state in writing the reason(s) for the discipline.  The Employer agrees to provide a copy of written disciplinary notices to the employee, Delegate, and to the Union office (in cases of discharge only) within three (3) working days following the disciplinary action unless the employee specifically advises the Employer that he or she does not wish the Delegate to have a copy.

10.3  An employee will not be disciplined for an act(s) which occurred more than thirty (30) days prior to the issuance of discipline, unless the Employer was without knowledge of the act, in which case the thirty (30) days will be measured from the date the Employer should reasonably have known of the act, or unless the discipline shall be for acts which constitute a criminal felony or misdemeanor or is part of a pattern of conduct (e.g., excessive absenteeism), in which case the thirty (30) days will be measured from the date of conviction or plea or based on the pattern.

10.4  An employee called to a disciplinary meeting shall be informed of the right to representation by a Union Delegate and The Employer shall comply with the employee's request.

## ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE

11.1 For the purpose of this Agreement, a grievance shall be defined as a dispute with regard to the application, interpretation or performance of an express term or condition of the Agreement.

11.2 A grievance may be filed only by the Union, or the Employer, and must be filed pursuant to the following procedures:

**STEP 1:** A designated shop steward may file a grievance on behalf of an employee or group of employees by submitting the grievance in writing on a form as contained in Exhibit A of the Agreement to the Employer's department head or his designee. Said grievance must be submitted within thirty (30) calendar days after the occurrence of the alleged violation of this Agreement or within thirty (30) days after the employee, by use of reasonable diligence, should have been aware of the facts and circumstances of the occurrence, The department head or his designee shall respond to the grievance within seven (7) calendar days after its presentation

**STEP 2:** If the grievance is not satisfactorily adjusted in "step 1" or if his department head or designee does not respond within seven (7) calendar days, then the Union shall present the grievance to the Employer's administrator, in writing, on the grievance form within seven (7) calendar days from the date the employer's response would have been due. The Administrator shall respond within seven (7) calendar days after its presentation.

**STEP 3 ARBITRATION:** If the grievance is not satisfactorily adjusted in "Step 2," or if the Administrator does not respond within seven (7) calendar days, then the Union will have the right to submit the grievance to arbitration for final and binding resolution. The Employer's failure to respond in any of the steps noted above shall permit the Union to proceed to the next appropriate step. Such time frames may be extended by the written mutual agreement of the parties, failing which the matter shall no longer be substantively arbitrable.

11.3 Grievances involving suspensions or discharges shall be submitted directly at "Step 2," as shall grievances submitted by the Employer, and the time limits provided in "Step 2," shall be applicable.

11.4 The arbitrator may not add to, subtract from, or otherwise amend or modify the terms of this Agreement.

11.5 The following individuals shall serve as contract arbitrators on a rotating submission basis: Mr. Jay Nadelbach, Mr. Roger Maher and Mr. J. J. Pearson. Payment of the arbitrator's fees and costs shall be shared equally by the parties to this Agreement. To the extent practical, the labor arbitration rules of the American Arbitration Association shall be applied.

11.6 Upon mutual agreement in writing, any additional dispute or grievance whether then in existence or arising after the sending of the said notice, shall likewise, if so requested in writing, be arbitrated at the time of the arbitration hearing. The Arbitrator, upon such notice he shall give to the parties, proceed to a hearing at a date, time and place fixed by him after consultation with Counsel for the Union and Association to establish a mutually agreeable date. All the aforesaid notices shall be deemed good and sufficient notices and the parties waive the application of any laws to the contrary. If either party fails or refuses or neglects to appear, then the Arbitrator shall hear the evidence of the parties appearing and render his decision as if both parties appeared. As many as seven (7) employees called as witnesses by each party to this Agreement in any arbitration proceeding shall not suffer any loss of pay and shall be made whole for all time lost from work as a result of appearing at such arbitration proceedings. The decision of the Arbitrator shall be final and conclusively determine the matter, and the decision shall have the effect of a judgment, which shall be entered upon the award in a court of competent jurisdiction. The oath of the Arbitrator is expressly waived.

11.7 The cost of arbitration shall be borne equally by both parties. The parties consent that any and all papers, notices, motions, petitions, subpoenas, legal processes or other legal documents necessary or proper for initiation or continuation of an arbitration, or to vacate, enforce or confirm an award, or enter judgment thereon shall be deemed duly and sufficiently served if served by ordinary mail directed to the party's address as set forth herein or to the party's attorney or by personal service waived. The maintenance of a peaceful and constructive relationship and industrial stability between the Union, the Employer and their

employees, requires the use of the grievance and arbitration machinery for the settlement of all complaints, grievances and disputes, and that it would detract from this relationship if individual employees or groups of employees would either as such individuals or groups seek to interpret or enforce this Agreement on their own initiative or responsibility. It is, therefore, agreed that this Agreement shall not vest or create any employee or group of employees covered thereby any rights or remedies which they or any of them may enforce either at law or in equity or otherwise. It is understood and agreed that all of the rights and privileges created by or implied from this Agreement shall be enforceable only by the Union, the member Employer, and only in the manner established by this Agreement.

## ARTICLE 12 – WORK WEEK

12.1 The regular workweek shall be thirty-seven and one-half (37 1/2) hours, consisting of five (5) consecutive days in any week. The workday shall consist of seven and one-half (7 1/2) consecutive hours each day, excluding thirty (30) minutes for meals. All hours worked in excess of seven and one-half (7 1/2) hours in any one (1) day, or thirty-seven and one-half (37 1/2) hours in any week shall be paid for at the rate of time and one-half the regular hourly rate of pay.

12.2 All time worked by employees on their sixth (6th) work day of the week, irrespective of whether a holiday and/or jury duty occurred during such week shall be paid for at a rate of time and one-half the regular hourly rate of pay. All time worked by employees on their seventh (7th) work day of the week, irrespective of whether a holiday and/or jury duty has occurred during such week shall be paid for at the rate of time and one-half the regular hourly rate of pay.

12.3 Part-time employees (defined as employees who work less than 20 hours per week) shall be paid pursuant to the Wage Article and shall receive pro-rated pay, sick leave, holidays, vacations, etc., according to the hours they actually worked. All other employees working less than the full work week shall have their benefits pro-rated by the hours they actually work.

12.4 No employee will be transferred to a shift other than that for which said employee was hired, except by mutual consent. There shall be no change in the regular posted schedule except on at least one (1) week's prior written notice to the Employee and the Union. Regular work schedules will be posted at each Nursing station.

12.5 There shall be no reduction in pay because of any reduction in the work week.

12.6 Each employee shall receive two (2) fifteen (15) minute breaks per shift.

12.7 All regular full time employees shall receive every other weekend off unless an employee elects not to participate. No reduction or Change for those presently receiving better (past practice prevails).

12.8 Overtime shall be offered on an equitable basis based on seniority. Current practices shall be maintained for the duration of this Agreement. The Employer's liability to the Employees for errors or omissions in scheduling or allotment of overtime shall be limited to offering of the next available overtime shift to the Employee.

12.9 Effective July 1, 1996, evening and night shift employees shall receive an additional one dollar ($1.00) per day. All employees who work during the current differential hours, even if normally working on the dayshift, shall receive the differential presently paid.

12.10     In the event a LPN on the 7-3 or 3-11 shift assumes the responsibilities of the first floor desk, he/she shall receive an additional fifty cents (.50) per hour.  In the event a LPN on the 7-3 or 3-11 shift working on the second floor assumes the responsibilities of the RN supervisor and no RN supervisor is working, he/she shall receive an additional fifty cents (.50) per hour.

12.11     The Employer may hire Licensed Practical Nurses as "No Frills" employees to a maximum of six (6).

## ARTICLE 13 – WAGES

13.1 Effective August 1, 2005, all employees shall receive the following wage increases:

| | |
|---|---|
| 8/1/2005 | 3% |
| 8/1/2006 | 2.5% |
| 3/1/2007 | 2% |
| 8/1/2007 | 2.5% |
| 3/1/2008 | 2% or placement on the scale pursuant to Section 2 below. |

13.2  Effective March 1, 2008, an employee whose wage rate is below the 5-Year Step shall be placed on the step that provides a minimum increase of one percent (1%) and then proceed to the next step on the employee's next anniversary date.

13.3  If an employee transfers to a higher paid labor grade, the employee shall be placed at the starting rate or at the step that provides a minimum increase of three percent (3%), whichever is greater.

13.4 Employees performing work of a higher classification shall receive the rate for the higher classification.

13.5 Wages are to be paid by check each and every two (2) weeks and accompanying all pay shall be an itemized list of deductions.

13.6 Longevity Bonus

1. All employees shall receive a two hundred ($200.00) dollar longevity bonus after 15 years of continuous employment.

2. All employees shall receive a three hundred ($300.00) dollar longevity bonus after 20 years of continuous employment.

## ARTICLE 14 – MEALS

Full, good and wholesome hot meals shall be furnished to each employee who works four (4) or more hours each day without cost to the employee. The failure,

refusal, or omission of the Employer to do so shall obligate the Employer to pay the affected employee at the rate of one dollar and seventy-five cents ($1.75) per meal. Night shift and LPN employees shall be reimbursed one dollar and seventy-five cents ($1.75) in lieu of meals.

## ARTICLE 15 – HOLIDAYS

15.1 Employees shall receive the following contractual holidays:

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| Washington's Birthday | Decoration Day |
| Independence Day | Labor Day |
| Thanksgiving Day | Christmas Day |
| Employee's Birthday | Personal Days (2) |
| Good Friday | |

15.2 Employees hired before January 1, 1989, shall receive three (3) personal days per year. Employees hired on or after January 1, 1989 shall, after one (1) year of employment, receive one (1) personal day and after two (2) years of employment receive two (2) personal days as provided for herein.

15.3 Employees who are out on sick leave for a period not exceeding three (3) months shall be entitled to the foregoing holidays with pay.

15.4 All leap-year birthday employees shall have an equivalent day off each year. The date of an employee's birthday as set forth on his application for employment shall be conclusive upon the Employer. If a holiday or the employee's birthday falls on one of his days off, he shall still be entitled to the holiday or birthday pay. Employees must work three (3) months in each calendar year before becoming eligible for personal days.

15.5 Should it be necessary for an employee to work on any of the holidays to which he is entitled, he shall receive his regular straight time pay in addition to the holiday pay. Vacation request will be considered at any time if submitted 60 days prior to the requested vacation dates.

15.6 Employees shall be notified by the Employer five (5) working days in advance in the event the said Employer requires such employee or employees to work on the holiday.

15.7 If any one of the holidays or the employee's birthday occurs during his vacation period, such employee shall be entitled to receive an additional day's pay in lieu thereof.

15.8 In order to be eligible for holiday pay an employee must work the last scheduled day before and scheduled day after the holiday, except for the employee's birthday, in which case the employee must work the last scheduled day before or scheduled day after the birthday holiday in order to be eligible for holiday pay.

## ARTICLE 16 – VACATIONS

16.1 Vacations with full pay at the employee's prevailing rate of pay at the time of vacation shall be granted for full length of service in the establishment, and not merely based on length of ownership of the establishment by the Employer as follows:

### Gr1, Gr2 and CNA

| PERIOD OF SUBSTANTIAL EMPLOYMENT | AMOUNT |
| --- | --- |
| 6 months but less than 1 year | 1 week |
| 1 year but less than 5 years | 2 week |
| 5 years but less than 10 years | 3 weeks |
| 10 years but less than 15 years | 4 weeks |
| 15 years but less than 20 years | 5 weeks |
| 20 + years | 6 weeks |

### LPN

| PERIOD OF SUBSTANTIAL EMPLOYMENT | AMOUNT |
| --- | --- |
| 6 months but less than 1 year | 1 week |
| At the end of second 6 months | 2 weeks |
| 1 year but less than 5 years | 3 weeks |

5 years but less than 7 years........................................................................ 4 weeks
7 years but less than 12 years...................................................................... 5 weeks
12 years but less than 15 years..................................................................... 6 weeks
12 years but less than 15 years..................................................................... 7 weeks
20 + years..................................................................................................... 8 weeks

16.2 Vacation assignments shall be made by the Employer and the Union to insure the orderly and efficient continuation of operations, but the Employer agrees to give, whenever possible, the desired vacation time on a consecutive basis indicated by the employee in order of seniority. Vacation pay shall be paid on the last regularly scheduled working day prior to such vacation. If any employee's employment terminates for any reason whatsoever, after six (6) months of substantial employment or more he shall receive pro-rated vacation pay. Breaks in service not exceeding three (3) consecutive months shall not affect an employee's eligibility for vacation benefits.

16.3 If there is a death in an employee's immediate family as defined in the Bereavement Article during an employee's vacation, then the appropriate number of days shall be counted as bereavement days and an equal number of vacation days shall be restored to the employee's accrued time

16.4 Employees receiving more than two (2) weeks vacation per year, may take up to one (1) week of vacation time as individual days. Employees must give such notice as is required for individual days.

16.5 Vacations taken during the week of Thanksgiving or between December 15 and January 1st of each year shall be limited to requests of less than one (1) week, except by mutual agreement. Further, if an employee takes vacation during these weeks in one (1) year, then in the following year said employee shall not be able to use her seniority in the request and approval process.

16.6 Vacation requests will be considered at anytime if submitted 60 days prior to the requested vacation dates.

## **ARTICLE 17 – SICK LEAVE**

17.1 Sick leave to be paid at the rate prevailing at time of accrual.

17.2 Each employee shall receive a maximum of twelve (12) days of paid sick leave each calendar year, accruing at the rate of one (1) day per month. Leaves of absence for illness not exceeding three (3) months shall not be counted in determining "substantial employment". New hires shall receive two (2) fewer sick days with pay the first year of employment, employees shall receive one (1) less sick day with pay in the second year of employment and twelve (12) sick days beginning in the third year of employment.

17.3 Unused sick leaves shall be paid to employees at least one (1) week prior to Christmas time in each year, except that in the year this Agreement terminates or upon termination of employment for any reason whatsoever, it shall be paid on such respective termination date. Sick time may be carried over into the following year, at the request of the Employee. The Employee requesting the carry over must request it to the Employer, in writing, by December 1 of the current year.

17.4 Sick leave will be paid for as and when used.

17.5 Absences from the last day of work of three (3) days or more may be required to provide medical certification if requested.

## ARTICLE 18 – LEAVE OF ABSENCE

18.1 Any employee becoming ill shall be entitled to a leave of absence for an illness lasting up to six (6) months during any twelve (12) month period. Such leave may be extended to nine (9) months should the employer determine that a severe illness exists. Said employee shall be entitled to reinstatement without loss of seniority. Any employee injured upon the job shall be reinstated upon recovery without loss of seniority or other benefits provided herein, such as holidays, sick days, and vacation time, but benefits shall be limited to six (6) months. Reinstatement from a work related injury shall be limited to two (2) years without loss of seniority and any interim applicable wage increase shall be reflected.

18.2 Contributions set forth to the Funds shall be continued to be paid during the period of all leaves provided in this Agreement except for personal leave, Union leave, and study leave, for a period not to exceed two (2) months subject to applicable law.

18.3 Any employee shall be entitled to a leave of absence for personal reasons, which privilege shall not be abused. The employee shall give written notice to the Employer that he is taking the leave of absence.

18.4 In the event an employee is drafted or enlists in the armed services, said employee upon honorable discharge shall be entitled to reinstatement to the position held at the time of joining the armed services and shall receive such rate of pay as shall at the time of reinstatement represent the current rate of pay, for that position, in the Employer's establishment.

18.5 Leave for Study. An employee who wishes to undertake the schooling to qualify for a higher classification of work shall be granted a leave of absence for not more than two (2) years to complete such schooling. Upon proof of satisfactory completion thereof, the Employer shall grant such employees preferential hiring rights in the classification in which such employee is then qualified, and also be entitled to the benefits of the tuition clause.

## ARTICLE 19 – MATERNITY LEAVE

Leaves of absence shall be granted for pregnancy for a period of up to twelve (12) months, commencing as of the time the pregnant employee leaves her employment and the said employee shall be entitled to reinstatement at the conclusion of such leave without loss of seniority.

## ARTICLE 20 – BEREAVEMENT LEAVE

In the event of death of spouse, domestic partner, child or parents, the employee shall been entitled to four (4) days of paid leave. In the event of death of an employee's brother or sister, the employee shall be entitled to three (3) days of paid leave. In the event of a death of a member of the immediate family who lives out of town, additional time off is necessary. The Employer will grant reasonable additional time off without pay for the purpose of attending the funeral. The employee if requested by the Employer shall furnish verification of death.

## ARTICLE 21 – LEAVE FOR JURY DUTY

Employees called for jury duty shall be paid the difference between their regular pay and the amount they receive as jury pay, for a period of one (1) month.

## ARTICLE 22 – PATERNITY LEAVE

In the event an employee's spouse gives birth to a child, then the employee shall be entitled to two (2) days of paid leave.

## ARTICLE 22 – LEAVE FOR MARRIAGE

In the event an employee marries, the employee shall be entitled to two (2) days of paid leave.

## ARTICLE 23 – TUITION

Full-time employees employed one (1) year or more shall be entitled to a tuition reimbursement of twenty-five dollars ($25.00) per credit up to twelve (12) credits per year in the field of nursing or job related upon satisfactory completion thereof.

## ARTICLE 24 – MALPRACTICE INSURANCE

Malpractice insurance to be provided by the Employer at its own cost, as heretofore.

## ARTICLE 25 – POLYGRAPH TEST

The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test. Any polygraph statement obtained on behalf of the Employer may not be used in

any proceedings involving any employee within the bargaining unit, except in proceedings where the health and safety of the patients are or may be concerned.

## ARTICLE 26 – BREAKAGE

The Employer shall not deduct any monies from any employee for breakage or any other purpose, except if malicious, intentional or required by law and except as herein expressly provided for.

## ARTICLE 27 – UNIFORMS

Effective January 1 2001, all employees shall receive a uniform allowance of $75.00 per year, payable in February of each year. Effective August 1, 2005, nursing department employees shall receive a uniform allowance of $125.00 per year, payable as follows:

| | |
|---|---|
| August each year | $50 |
| February each year | $75 |

## ARTICLE 28 – MAINTENANCE OF STANDARDS

The Employer shall not lower any wages, hours or working conditions. Any benefits, of whatever kind or nature enjoyed by or hereafter given to an employee, shall be continued during this Agreement. No private deals shall be made with any employee. A non-bargaining unit employee shall do no bargaining unit employee's work.

## ARTICLE 29 – MEDICAL EXAMINATIONS

Employees may be required to take medical examinations by the Employer's designated physician at times and dates specified by the Employer. The Employer shall give reasonable advance notice to the employees of such examinations. All medical examinations required by the Employer shall be paid by the Employer, except that if an employee fails or refuses to take a medical examination at the time and date specified by the Employer, after receiving reasonable advance notice of

such examination, the Employer shall be relieved of his obligation to pay for such examination and the payments therefore shall be made by the employee. Medical examinations, as referred to above, are solely for the purpose of annual examinations as required by the State Department of Health and this clause is not to be used for any other purpose.

## ARTICLE 30 – CHECK-OFF AUTHORIZATION

30.1 The Employer agrees to deduct no later than the first payroll day of each month from the wages of employees their membership dues and initiation fees. The Employer shall also remit immediately said monies to the Union, together with a list, which shall be transmitted electronically, of employees' names for whom such deductions have been made and the amounts thereof; provided that the Employer has received from each employee on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of this Agreement, whichever occurs sooner. All funds deducted by the Employer shall be held as trust funds and shall not be commingled with other funds of the Employer. In the event the Employer fails to promptly remit such monies, the Arbitrator must, upon application, assess interest at the legal rate, attorney's fees and all costs of collection against the Employer.

30.2 An Employee may consent in writing to the authorization of the deduction of a COPE (Committee on Political Education) fund contribution from his her wages and to the designation of the Union as the recipient thereof. Such consent shall be in a form acceptable to the Employer and shall bear the signature of the Employee. An Employee may withdraw his/her political action fund authorization by giving at least thirty (30) days notice in writing to the Employer. The Employer shall deduct such COPE contribution from the pay of the Employees who request such deduction and shall transmit deductions to the Treasurer of the Union together with a list of Employees whose political action funds are transmitted at the time dues deduction are transmitted in the same manner.

## ARTICLE 31 – SAVINGS CLAUSE

In the event that any portion of this Agreement is invalidated by the passage of legislation or a final decision of a court or government agency having jurisdiction, such invalidation shall apply only to that portion thus invalidated and

all remaining portions of this Agreement not invalidated shall remain in full force and effect.  Any substitution for the invalidated portion, which is mutually agreed upon between the parties, shall be reduced to writing and shall thereupon become a part of this Agreement.

## ARTICLE 32 – CONTRACTING OUT

It is agreed between the parties that for the preservation of the work opportunities of the employees within the collective bargaining unit covered by this Agreement, the Employer shall not subcontract out any of the bargaining unit work of employees covered by this Agreement without the prior written consent of the Union.  If permission is granted by the Union, any contract or Agreement between the Employer and a contractor shall with respect to the affected employees, comply with all terms and conditions of this Agreement, and the Employer guarantees the performance thereof by the contractor.

## ARTICLE 33 – GNY/1199 BENEFIT FUND

33.1        Effective June 15, 2005, unless otherwise mutually agreed, the Employer shall make contributions to the 1199/SEIU Greater New York Benefit Fund ("Fund") for each employee covered by this Agreement at the rate of 22.33% of gross payroll (as defined and as in practices in the Greater New York Funds) of all bargaining unit.  In the event that the Trustees of the Fund determine that contributions in excess of 22.33% are required to grant the current benefits to the employees, the parties agree that, at the Union's sole option and discretion, to either provide that the parties promptly meet to propose plan revisions that will keep the contribution rates at 22.33% or make other modifications in other parts of the economic costs of the contract such that it covers the full percentage required by the Trustees.  In the event that the parties cannot agree on the sort of plan revisions that will keep the rates at 22.33% , they agree to submit the dispute to final and binding arbitration as herein provided.  In no event shall the contribution requirement of the Employer exceed 22.33% of gross payroll as above defined, except by mutual agreement.  In the event that the Fund Trustees determine, in their sole discretion, that the Fund will no longer cover the affected employees, the parties shall promptly meet to negotiate acceptable replacement coverage.  In such event the Employer shall not be required to pay any amounts for health insurance that exceed the dollar amounts provided for in this provision of the Agreement.  Eligibility for

contributions shall be determined as heretofore, except that RN and LPN contributions shall be capped at the average C.N.A. rate or $12.00. whichever is greater. "Gross payroll" for the purpose of this provision shall exclude payment for unused sick days, uniforms, transportation allowance and meals.

33.2 No Employer shall be required to contribute for welfare coverage except as herein provided. Eligibility for contributions shall be as heretofore.

33.3 The GNY Benefit Fund shall provide for the covered employees and such of their spouses and dependents, such benefits as the Trustees of the Welfare Fund shall from time-to-time decide upon.

33.4 Such contributions shall be paid by the Employer on or before the tenth day of each month and shall cover the previous month's employees covered by this Agreement. In the event the Employer, without justification, fails to timely remit contributions, the Arbitrator may, upon application, assess interest at the legal rate against the Employer.

33.5 The payments so made by the Employer shall be used by the 1199/SEIU Greater New York Benefit Fund solely for those fringe benefits set forth in the Trust Agreement heretofore executed and thereafter amended establishing such 1199/SEIU Greater New York Benefit Fund. The parties understand that the 1199/SEIU Greater New York Benefit Fund will be held and managed under the terms and provisions of an Agreement and Declaration of Trust executed in connection with the said Fund.

33.6 The Employer shall furnish to the Union monthly a statement indicating the names of the Employees covered by this Agreement, their social security numbers and the amount of wages paid, or such other report, record or statement as shall supply such information, and agree to make available for inspection to the Trustees of the Fund all payroll records that may be required for the sound and efficient operation of the Fund, or which may be required by the insurance companies, if any, insuring the employees.

33.7 In the event a dispute arises in connection with the Employer's failure to make required contributions and the Union submits the matter to arbitration and prevails, the Arbitrator's decision shall include a directive requiring the Employer to pay all reasonable audit and accountants' fees, the full amount of the Arbitrator's fees, collection expenses including court costs, if any, and interest at the then current

legal rate, together with reasonable attorneys' fees for the attorney representing the Union and/or the Fund in connection with the arbitration and/or court proceedings.

33.8 Notwithstanding the foregoing, if any employee is disentitled to any benefits provided by the Funds by reason of the Employer's delinquency in the payment of contributions, such Employer shall be liable to such employee, in a civil action, for the full amount of the benefits which the employee lost, together with court costs. Acceptance or collection of delinquent contributions by the Fund shall not absolve the Employer of this liability.

33.9 An employee may opt out of health insurance coverage upon a show of proof of other coverage. Employee's who opt out of health insurance coverage shall be required to show proof of other coverage on an annual basis. Employees who opt out shall be paid an additional one dollar ($1.00) per hour for all hours paid. The wages of employees who opt out shall not be considered as part of gross payroll for the purposes of the GNY Benefit Fund. If an employee is no longer covered by another health insurance plan, then the employee shall inform the Employer and shall be covered by the GNY Benefit Fund beginning with the following calendar month. When an employee becomes covered her/his wages are considered as part of gross payroll and the employee shall no longer receive the additional one dollar ($1.00) per hour.

## ARTICLE 34 – NATIONAL INDUSTRY PENSION FUND

34.1 COVERAGE. The Employer shall make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

34.2 TERM. The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

34.3 CONTRIBUTIONS. Effective June 15, 2005, the Employer agrees to contribute to the Fund an amount equal to gross earnings of two percent (2%) for each employee covered by the Agreement from the employee's ninety-first (91) of employment or the effective date of the Collective Bargaining Agreement, whichever is later. Effective March 1, 2008, the Employer contribution shall

increase to two and one-half percent (2½%) of gross payroll.

(a)    Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine

(b)    Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

34.4 TRUST AGREEMENT. The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board

34.5 COOPERATION. The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retire Income Security Act.

34.6 APPROVAL BY TRUSTEES. The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

34.7 It is agreed by the parties that arbitration is the preferred method for the resolution of disputes alleging delinquencies to the Pension Fund provided for in this Agreement. Effective December 15, 2005, upon Trustee approval, the parties commit themselves to utilize the arbitration procedure provided for in this Agreement to resolve any and all such disputes. The parties also agree that the venue for all litigation concerning these issues shall be the New York and New Jersey area. The parties understand that the Trustees may unilaterally withdraw such approval at their sole discretion.

## ARTICLE 35 – TRAINING FUND AND ALLIANCE FUND

35.1 1199NY SEIU/GNY TRAINING AND EDUCATION FUND ("TRAINING FUND"): The Employer shall contribute at the rate of one-half percent (1/2%) of gross payroll to the Training Fund.

35.2 NEW JERSEY HEALTH CARE WORKERS ALLIANCE FOR QUALITY IN LONG TERM CARE: The Employer contribution to the Alliance Shall be an amount equal to one-half percent (1/2%) of gross payroll of the employees.

35.3 The full amount of the above contributions shall be remitted by the Employer for all full and part-time employees on the tenth (10th) day of each current month in advance. Together with such payments there shall be remitted to the Training and Alliance Funds (the "Funds"), statements showing the name of each employee for whom contributions are made. The Employer shall be bound by and agrees to comply with all rules, regulations and decision, issued, made or promulgated by the Funds, including any and all amendments and changes therein. The parties hereto confirm and approve the composition and membership of the Board of Trustees of the Funds as now and hereafter constituted. The Union and the Funds shall have the right to examine the Employer's books and records for the purpose of determining whether the Employer has complied with the provisions of this Article.

35.4 Insofar as payments by the Employer to the Funds are concerned, time is of the essence. The regular and promptly payment of contributions due to the Funds are essential to the stability of the Funds and to the promptly payment of benefits, and that it would be extremely difficult, if not impracticable to fix the actual expense and damage to the Funds which will result from the failure of the Employer to make payments in full within the time provided.

35.5 In the event a dispute arises in connection with the failure of the Employer to make the required payments provided for in this Agreement, and in the event the Union submits the matter to arbitration the Arbitrator's decision may contain a directive that the Employer pay all audit and accountant's fees, the full amount of the Arbitrator's fees, collection expenses, including court costs, if any, and interest at the current legal rate, and all reasonable attorney fees for any attorney representing the Union and/or the Funds in connection with the arbitration and court proceedings.

## ARTICLE 36 – MANAGEMENT RIGHTS

36.1 The management of the establishment and the direction and control of the property and work force shall remain with the Employer. The rights herein described shall include but not be limited to: the right to hire; lay-off; discharge for just cause; in case of emergencies to require that duties other than those normally assigned be performed, except that "emergencies" shall not exist for longer than two (2) days; to make reasonable working rules and regulations of procedure and conduct; to determine work shifts, provided however, that the exercise of all these rights must be consistent with the terms and conditions of this Agreement and are not to be used so as to discriminate against any person by reason of Union membership. Unless limited by a specific provision of this Agreement the right to operate and manage the Facility and the right to select and direct the work force are vested exclusively with the Employer, whether exercised or not. These rights include, but are not limited to the right to hire, transfer, evaluate, promote, discipline, make and enforce work rules, suspend, discharge for just cause, to lay-off and schedule employees, to determine staffing levels, establish and or modify positions and assign duties in accordance with the needs and requirements as determined by the Facility.

36.2 The right to determine standards of performance and to promulgate and to enforce the reasonable written rules and regulations as necessary to maintain order, safety and or effective operations of the Facility. The right to determine and or change the nature of its services and to introduce change and operate new or improved methods, facilities, processes and techniques. The failure of the Employer to exercise any of these rights shall not be construed as waiver of any rights the Employer may have.

## ARTICLE 37 – THE PARTIES

This Agreement shall be binding upon the parties hereto, their successors and assigns, and shall apply to all establishments now or hereafter owned, operated, or controlled by the Employer, provided that the Union demonstrates valid Union recognition. If the Employer shall sell, transfer, or otherwise dispose in whole or in substantial part of its business, merge or consolidate it with that of any other person, firm or corporation, the Agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the terms and conditions of this Agreement. Further, that it shall retain in its employ all employees then employed in the business; that the person, firm or corporation that thereafter operates the business shall be responsible for all unpaid wages, all Fund payments, vacations, holidays, sick leave and all other monetary items. The Employer shall give prior notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing and a copy served upon the Union at the time the seller, transfer or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, excluding financial details. In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Agreement, the Employer shall be liable to the Union and to the employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Agreement. Any dispute of whatsoever kind or nature arising under this Article shall be subject to the arbitration procedure herein, and the Arbitrator has jurisdiction to determine the same and issue a decision awarding any sums of money and damages. In the case of HRF facilities, the parties will establish appropriate categories.

## ARTICLE 38 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT

The terms and condition of employment as set forth in this Agreement shall govern the relations between the Employer and his respective employees, and no deviation from or modification of said terms and conditions of employment should be permitted. However, if prior to this Collective Bargaining Agreement with the Union, the employees of the Employer enjoyed more favorable terms of employment, then such more favorable terms and conditions shall continue.

## ARTICLE 39 – LABOR-MANAGEMENT COMMITTEE

39.1   There shall be joint Labor-Management Committee, each of which shall consist of a maximum of three(3) representatives from the Employer and three (3) representatives from the Union.  The Committee shall meet monthly.

39.2   The format of the Committees shall be informal and will be used to discuss Labor-Management matters.  The Committee shall have no authority to change or alter contract language, but shall address probable or real workplace changes. Neither party shall forfeit any contractual ability to move to any other legal means of resolution.  No issue that has been previously resolved through arbitration and/or other means shall be brought before the Committee.  No issues discussed by the Committee shall be considered anything other than a constructive means of continuing harmony and avoiding contractual disputes.

39.3   Employees shall be paid for all time lost from their work schedule for attendance at these meetings and, for scheduling and replacement purposes, shall inform their Supervisor of the meetings they will be attending no less than five (5) work days in advance.  The Supervisor shall schedule replacements accordingly.

## ARTICLE 40 – DURATION

40.1 THIS AGREEMENT SHALL BECOME effective from April 1, 2005 and shall remain operative and binding upon the parties hereto, their heirs, successors, assigns, administrators, concessionaires, and others, and shall apply to all present and future establishments until midnight of June 15, 2009.  If, for any reason, the Employer shall change its name or status, or the Union shall change its name, affiliation or status, it is agreed that such changes shall in no manner modify or affect the binding obligations of this Agreement.  The Union shall have the right ninety (90) days prior to June 15, 2008 to reopen and negotiate wages (minimum and across the board increases), hours and general terms and conditions of employment, to be effective for the fourth (4th) year of this agreement.  If the parties have not reached agreement by the June 15, 2008, the items not yet settled shall be submitted to arbitration as herein set forth, and the Award shall be final and binding.

40.2 This Agreement shall continue in full force and effect until June 15, 2009, at midnight, and shall be automatically renewed for an additional period of four (4) years, unless at least ninety (90) days prior to the termination date either party serves written notice, by certified mail, on the other of the desire to terminate the Agreement or modify its terms. In the event that the Agreement is automatically renewed, then at the option of the Union, the parties shall renegotiate yearly such wages, hours and general terms and conditions of employment as the Union requests. If the parties fail to agree, the items not yet settled shall be submitted to arbitration as herein set forth and the Award of the Arbitrator shall be final and binding.

40.3 This Agreement shall not be changed, altered, modified or amended, unless in writing, and signed by the authorized representatives of the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.


EMPLOYER                          UNION
KASOT CORPORATION                 SEIU 1199 NEW JERSEY
dba
ATLANTIC HIGHLANDS
NURSING HOME, INC


By:_____         By:_____


                                  :_____


                                  :_____


                                  :_____


                                  :_____

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.


EMPLOYER                              UNION
KASOT CORPORATION                     SEIU 1199 NEW JERSEY
dba
ATLANTIC HIGHLANDS
NURSING HOME, INC


By:_____          By:_____


                                      :_____


                                      :_____


                                      :_____


                                      :_____

## SCHEDULE A

**Current**

| Job Title | PP |
|-----------|---------|
| Gr 1 | $ 10.54 |
| Gr 2 | $ 10.97 |
| C.N.A | $ 11.07 |
| LPN | $ 20.50 |

Gr 1 = Housekeeping, Laundry, Dietary Aides and Dietary Utilites
Gr 2 = Maintenance and Cooks

**10/1/2007**

| Job Title | PP | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|-----------|---------|---------|---------|---------|---------|---------|
| Gr 1 | $ 10.01 | $ 10.21 | $ 10.41 | $ 10.62 | $ 10.84 | $ 11.05 |
| Gr 2 | $ 10.97 | $ 11.19 | $ 11.41 | $ 11.64 | $ 11.87 | $ 12.11 |
| C.N.A | $ 11.07 | $ 11.29 | $ 11.52 | $ 11.75 | $ 11.98 | $ 12.22 |
| LPN | $ 20.50 | $ 20.91 | $ 21.33 | $ 21.75 | $ 22.19 | $ 22.63 |

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

EMPLOYER
KASQT CORPORATION
dba
ATLANTIC HIGHLANDS
NURSING HOME, INC

UNION
SEIU 1199 NEW JERSEY

By:_____

By:_____

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In the Matter of the Arbitration               :

            -between-                          :

ATLANTIC HIGHLANDS NURSING HOME,               :
INC., a/k/a KASOT CORPORATION
               ("Employer")                    :
            -and-
                                               :        ARBITRATOR'S
1199 SEIU, NEW JERSEY HEALTH CARE                         AWARD
     UNION                                     :
               ("Union")
                                               :
Re: Delinquent Funds contributions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
Before: Jay Nadelbach, Esq., Arbitrator
```

Under the parties' collective bargaining agreement, the Union submitted to arbitration a dispute concerning the failure and/or refusal of the Employer to remit reports and/or to make proper and timely contributions to the 1199 SEIU Greater New York Benefit Fund and the 1199 SEIU Greater New York Education Fund.

Pursuant to notice, a hearing was conducted on August 2, 2007 via telephone conference call among the parties' representatives. Participating were Linda E. Rodd, Esq. of Meyer Suozzi English & Klein, P.C. for the Union; Ari Weiss, Esq. of the law offices of Morris Tuchman, P.C. for the Employer; and Anthony Petrella, Funds Controller. Also, in advance of the scheduled hearing, Mr. Petrella provided via e-mail to the parties and the Arbitrator current statements of the Employer's account to reflect payments made and monies owed by the Employer to the respective Funds as of the date of the arbitration. The Employer and its counsel had a reasonable

-2-

opportunity to review the documents provided and there was no dispute regarding the information set forth therein.

### FINDINGS AND AWARD

A review of the documents submitted into the record results in the following Findings and Award:

1. A total of FIFTY-SEVEN THOUSAND THREE HUNDRED EIGHTY-NINE dollars and THIRTY TWO cents ($57,389.32) is outstanding and past due to the Greater Nursing Home Welfare Fund. This amount reflects unpaid contributions for the months of May 2007 and June 2007. It includes a total principal due for the month of May 2007 of THIRTY-FOUR THOUSAND ONE HUNDRED SIXTY-SEVEN dollars and EIGHTY-TWO cents ($34,167.82) and interest thereon of SIX HUNDRED EIGHTY-THREE dollars and THIRTY-SIX cents ($683.36); a total principal due for the month of June 2007 of TWENTY TWO THOUSAND TWO HUNDRED EIGHTY-THREE dollars and FORTY-FOUR cents ($22,283.44) and interest thereon of TWO HUNDRED TWENTY-TWO dollars and EIGHTY-THREE cents ($222.83); and a total balance for payroll periods prior to January 31, 2007 of THIRTY dollars and SEVEN cents ($30.07) in principal, and interest thereon of ONE dollar and EIGHTY cents ($1.80).

-3-

2. The Employer is hereby directed to immediately pay the Welfare Fund, upon receipt of this Award, the total amount due as set forth in paragraph #1.

3. A total amount of ONE THOUSAND SIX HUNDRED TWO dollars and TWELVE cents ($1,602.12) is outstanding and past due to the Greater Nursing Home Education Fund. This amount reflects unpaid contributions for the months of May 2007 and June 2007. It includes a total principal due for the month of May 2007 of SEVEN HUNDRED SIXTY FIVE dollars and SEVEN cents ($765.07) and interest thereon of FIFTEEN dollars and THIRTY cents ($15.30); a total principal due for the month of June 2007 of FOUR HUNDRED NINETY-EIGHT dollars and NINETY-SIX cents ($498.96) and interest thereon of FOUR dollars and NINETY-NINE cents ($4.99); and, a total balance for payroll periods prior to January 31, 2007 of TWO HUNDRED NINETY-NINE dollars and EIGHTY TWO cents ($299.82) in principal, and interest thereon of SEVENTEEN dollars and NINETY-NINE cents ($17.99).

4. The Employer is hereby directed to immediately pay the Education Fund, upon receipt of this Award, the total amount due as set forth in paragraph #3.

-4-

5.  If the Employer fails to pay any of the amounts due hereunder immediately upon receipt of this Award, the Union shall be entitled to seek additional interest and penalties as may be deemed appropriate under the parties' agreement, the trust agreements establishing the Funds, and relevant legal authority.

6.  The Employer is further directed to timely pay all monthly contributions to the Funds that become due and owing under the terms of the parties' agreement.

Dated: August 7, 2007

    New York, New York

                                                JAY NADELBACH

**AFFIRMATION**

STATE OF NEW YORK          )

                                :ss.:

COUNTY OF NEW YORK   )

I, JAY NADELBACH, affirm upon my oath as Arbitrator, that I am the person described in and who executed this instrument which is my Award.

                                                JAY NADELBACH